FILED
2025 Mar-19  AM 09:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

|                         |     |                                  |
|-------------------------|-----|----------------------------------|
| PONSETTA SIMMONS,       | )   |                                  |
|                         | )   |                                  |
|    Plaintiff, | ) |                              |
|                         | )   |                                  |
| vs.                     | )   | Civil Action No. 3:25-cv-105-CLS |
|                         | )   |                                  |
| UNITED PARCEL SERVICE,  | )   |                                  |
| INC. (OHIO),            | )   |                                  |
|                         | )   |                                  |
|    Defendant. | ) |                              |

## MEMORANDUM OPINION

Ponsetta Simmons is an African-American female who was formerly employed[1] by United Parcel Service, Inc., as a clerk, beginning in 1999. Her complaint alleges numerous claims: *i.e.*, discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA") (Count I); discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA") (Count II); discrimination on the basis of plaintiff's race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Count III); retaliation, in violation of each of the foregoing statutes (Count IV); and,

---

[1] Plaintiff's employment status is not clearly stated in her complaint. However, paragraph 27 alleges that: "Plaintiff *was* an African American (black) *former employment* [*sic*] *of Defendant* who *was* performing work at a satisfactory level." Doc. no. 1-1 (Complaint) ¶ 27 (emphasis and alteration supplied). Accordingly, this court assumes that defendant terminated plaintiff's employment on some unstated date. Even if that assumption is not correct, and plaintiff remains an employee of defendant, it would not affect the analysis and conclusions stated in this opinion.

a "hostile work environment" (Count V).  The following opinion addresses defendant's motion to dismiss all of plaintiff's claims.  Doc. no. 2.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff's factual allegations are few.  As stated above, she is an African-American female who formerly was employed by defendant, United Parcel Service, Inc. ("UPS"), as a clerk.[2]  She alleges that she is disabled due to replacement of her left knee; but that, with accommodations, she is able to perform the essential functions of her job.[3]  Plaintiff requested accommodations, including "an appropriate chair," a pressure relieving mat to stand on, and permission to elevate her left leg as needed.[4]  She requested those accommodations "several times," and directed her requests to an unnamed "former Supervisor."[5]  However, UPS did not grant her requests.[6]

Plaintiff also alleges that she was subjected to "inappropriate" age and racial comments by her supervisor, Chuck Sims, "and other management."[7]  The "inappropriate" comments included: a statement that "some workers are too old to

[2] Doc. no. 1-1 (Complaint) ¶¶ 6, 27.

[3] *Id.* ¶ 7.

[4] *Id.*

[5] *Id.* ¶ 8.

[6] *Id.*

[7] *Id.* ¶ 9.

2

work a job"; "giving black workers a 'MLK Day'"; and, playing the song "White Christmas" loudly.[8]

Plaintiff alleges that: she was subjected to a hostile work environment based upon her race, age, and disability; she was denied advancement in some unspecified manner, based upon those protected characteristics; and, UPS retaliated against her for engaging in protected activity.[9]

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on February 6, 2024.[10]  She received a Determination and Notice of Rights on September 26, 2024.[11]  This suit followed.[12]

## II.  STANDARD OF REVIEW

The relevant portion of Federal Rule of Civil Procedure 12 permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  That rule must be read together with Rule 8(a), which requires that a pleading contain only a "*short and plain statement* of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis

---

[8] Doc. no. 1-1 (Complaint) ¶ 9.

[9] *Id.* ¶¶ 11, 33.

[10] *Id.*, ex. A.

[11] *Id.*, ex. B.

[12] Plaintiff initially filed this lawsuit in the Circuit Court of Colbert County, Alabama, on December 18, 2024.  Doc. no. 1-1 (Complaint).  Defendant timely removed the action to this court on January 21, 2025.  Doc. no. 1 (Notice of Removal).

added).  While that pleading standard does not require "detailed factual allegations,"

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than

an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (citations omitted).  As the Supreme Court stated in *Iqbal*:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  [*Twombly*, 550 U.S. at 555].  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.
>
> To survive a motion to dismiss [founded upon Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face."  *Id.* at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ibid.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* at 557 (brackets omitted).
>
> Two working principles underlie our decision in *Twombly*.  *First*, the tenet that a court must accept as true all of the allegations contained in a compliant is *inapplicable to legal conclusions*.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Id.* at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of

discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 409 F.3d at 157–58. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.*

*Iqbal*, 556 U.S. at 678-79 (emphasis supplied, second and fourth alterations in original, other alteration supplied).

## III. DISCUSSION

## A.    Americans with Disabilities Act (Count I)

To establish a claim of failure to reasonably accommodate a disability, a plaintiff must prove: (1) she has a "disability" as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*; (2) defendant had notice of her disability; (3) plaintiff could perform the essential functions of her position with or without reasonable accommodations by defendant; and (4) the defendant refused to

make such accommodations. *See Richardson v. Honda Manufacturing of Alabama, LLC*, 635 F. Supp. 2d 1261, 1279 (N.D. Ala.). Plaintiff's first hurdle, which she failed to clear, is alleging facts that show she is disabled within the meaning of the ADA. Plaintiff's complaint states, in conclusory fashion, that she has a disability, "that being a replaced left knee."[13] The ADA defines a "disability" as:

> (A)    a physical or mental impairment that substantially limits one or more of the major life activities of an individual;
>
> (B)    a record of such impairment; or
>
> (C)    being regarded as having such impairment.

42 U.S.C. § 12102(1). In turn, the statute provides a non-exclusive list of "major life activities": caring for oneself; performing manual tasks; seeing; hearing; sleeping; walking; standing; lifting; bending; speaking; breathing; learning; reading; concentrating; thinking; communicating; and working. 42 U.S.C. §12102(2)(A). Plaintiff failed to allege facts to show that she is limited in any respect by her knee replacement. Accordingly, she has not pled facts that plausibly give rise to an entitlement to relief under the ADA.

## B.    Age Discrimination in Employment Act (Count II)

The ADEA prohibits employment discrimination on the basis of age against a

---

[13] Doc. no. 1-1 (Complaint), ¶ 7.

person who is at least forty years of age. *See* 29 U.S.C. §§ 623, 631. As an initial matter, plaintiff's complaint does not state her age. Accordingly, the court cannot conclude that she has pled a cognizable claim for age discrimination.

Even assuming that plaintiff is over the age of forty, she still has not stated a viable claim under the ADEA. UPS addresses plaintiff's claim as one for disparate treatment. However, a close reading of the complaint indicates that this claim is more properly viewed as a hostile environment claim. For example, paragraph 20 alleges that:

> Defendant's mistreatment of Plaintiff [by] making statements including, but not limited to "some workers being 'too old' to work a job," and *subjecting Plaintiff to a hostile work environment,* constitutes discrimination in violation of the ADEA.

Doc. no. 1-1 (Complaint) ¶ 20 (alteration and emphasis supplied).

While the Eleventh Circuit has not explicitly held that hostile work environment claims based upon the age of a plaintiff are cognizable under the ADEA, it has assumed their viability. *See Coles v. Post Master General United States Postal Services,* 711 F. App'x 890, 898 (11th Cir. 2017). The Eleventh Circuit has further assumed that such claims should be analyzed under essentially the same framework as Title VII hostile work environment claims. *Id.* Thus, in *Coles,* the Eleventh Circuit cited, with approval, the Sixth Circuit's formulation of the elements of an

ADEA hostile work environment claim:

1.    [The plaintiff] is 40 years old or older;

2.    [She] was subjected to harassment, either through words or actions, based on age;

3.    The harassment had the effect of unreasonably interfering with [her] work performance and creating an objectively intimidating, hostile, or offensive work environment; and

4.    There exists some basis for liability on the part of the employer.

*Id.* (quoting *Crawford v. Medina General Hospital*, 96 F.3d 830, 834-35 (6th Cir. 1996)) (alterations in original).

Plaintiff's allegation that her supervisor and other unidentified managers stated, *on an unspecified date*, that "some workers are too old to work" is not sufficient to state a claim under the ADEA. Plaintiff has not alleged that the comment was directed to her, or even that she personally heard it. Even if both were the case, an isolated comment will not support a claim for age discrimination. *See, e.g.*, *Jordan-Philadelphia v. Atlanta Medical Center/Wellstar Hospital*, No. 1:19-cv-0016-LMM-LTW, 2019 WL 12426036 at *3 (N.D. Ga. Apr. 10, 2019) ("[A] vague statement that an unidentified person or persons talks 'about her age and old' does not come close to the level of offensiveness required to state a hostile work environment claim.").

## C.    Title VII (Count III)

UPS interprets Count III of plaintiff's complaint as stating a claim for disparate

treatment under Title VII.  But, that Count reads, in its entirety, as follows:

25.    All prior paragraphs are incorporated by reference as though fully set out herein.

26.    Defendant's mistreatment of Plaintiff constituted employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e *et seq.*

27.    Plaintiff was an African American (black) former employment [*sic*] of Defendant who was performing work at a satisfactory level.

28.    Defendant, acting through its agents, servants, or employees, including, but not limited to, Chuck Sims, Center Manager, in the line and scope of their employment with Defendant, discriminated against Plaintiff based upon her *race, age, and disability*.

29.    Plaintiff seeks all damages recoverable, including lost wages, lost raises, lost benefits, lost retirement benefits, the costs of maintaining health insurance, and any other benefits applicable.

30.    Plaintiff seeks compensatory damages under U.S.C. Section 1981a [*sic*] and punitive damages under 42 U.S.C. Section 1981a, as the actions described herein were intentional or with malice or with reckless indifference to the violation of Plaintiff's federally protected rights under Title VII.

31.    Plaintiff seeks reasonable attorney's fees and costs under 42 U.S.C. Section 2000e-5k.

Doc. no. 1-1 (Complaint) ¶¶ 25-31, at 5 (emphasis supplied).  Those statements make

little or no sense.  Nevertheless, plaintiff alleges elsewhere that she was subjected to

"inappropriate . . . racial remarks by her superior, Chuck Sims, Center Manager."[14]
Accordingly, the court will construe Count III as a Title VII racially hostile work
environment claim.

To state a cognizable hostile work environment claim based upon a plaintiff's
race, the plaintiff must show that: (1) she is an African-American, a protected group;
(2) she was subjected to unwelcome harassment; (3) the harassment was based upon
her race; (4) the harassment was sufficiently severe or pervasive to alter the terms and
conditions of plaintiff's employment, and created a discriminatorily abusive working
environment; and (5) the employer is responsible for such environment under either
a theory of vicarious or direct liability. *Miller v. Kenworth of Dothan*, 277 F.3d 1269,
1275 (11th Cir. 2002).

Plaintiff alleges only two actions that she contends were race-based: "giving
black workers a 'MLK Day,'" and "playing White Christmas at work loudly."
Plaintiff does not provide context for either incident, or explain how they were
racially offensive.  As the Supreme Court has emphasized, context matters.  *See*
*Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 82 (1998) ("The real
social impact of workplace behavior often depends on a constellation of surrounding
circumstances, expectations, and relationships which are not fully captured by a

---

[14] Doc. no. 1-1 (Complaint) ¶ 9.

simple recitation of the words used or the physical acts performed.").  Without more,
plaintiff's allegations do not rise to the level of severe or pervasive conduct that
would support a racially hostile work environment claim.  Accordingly, Count III is
due to be dismissed.

## D.    Retaliation (Count IV)

UPS contends that Count IV of plaintiff's complaint constitutes impermissible
shotgun pleading.[15]  The court agrees.  In addition to incorporating all preceding
allegations by reference in each succeeding count, plaintiff also attempts to assert
retaliation claims based upon three separate statutes — *i.e.*, the ADA, ADEA, and
Title VII — in the same count.

Federal Rule of Civil Procedure 8 requires a pleading to contain a "short and
plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.
Civ. P. 8(a)(2).  Rule 10 requires a plaintiff to "state [her] claims or defenses in
numbered paragraphs, each limited as far as practicable to a single set of
circumstances."  Fed. R. Civ. P. 10(b) (alteration supplied).  So-called "shotgun
pleadings" violate those rules because they "fail to one degree or another . . . to give
the defendants adequate notice of the claims against them and the grounds upon
which each claim rests."  *Weiland v. Palm Beach Sheriff's Department*, 792 F.3d

---

[15] Doc. no. 2 (Defendant United Parcel Service, Inc.'s Motion to Dismiss Plaintiff's
Complaint and Memorandum of Law in Support), at 15.

1313, 1323 (11th Cir. 2015) (ellipsis supplied).

The Eleventh Circuit has repeatedly condemned shotgun pleadings, and demonstrated "little tolerance" for them. *See, e,g.*, *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir. 2018); *Davis v. Coca-Cola Bottling Co. Consolidated*, 516 F.3d 955, 979-80 & n.54 (11th Cir. 2008) (listing numerous cases). Shotgun pleadings "waste scarce judicial resources, 'inexorably broaden[ ] the scope of discovery,' 'wreak havoc on appellate court dockets,' and 'undermine[ ] the public's respect for the courts.'" *Vibe Micro*, 878 F.3d at 1295 (quoting *Davis*, 516 F.3d at 981-83) (alterations in original).

The Eleventh Circuit's opinion in the *Weiland* case, *supra*, identified four categories of shotgun pleadings:

> **[1]** The most common type — by a long shot — is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. **[2]** The next most common type . . . is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. **[3]** The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim of relief. **[4]** Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland*, 792 F.3d at 1321-23 (bracketed alterations and ellipsis supplied, footnotes omitted). Count IV of plaintiff's complaint commits all but the last sin, and could be dismissed on that basis alone. Even so, for other reasons, plaintiff has failed to state a cognizable claim of retaliation under the ADA, the ADEA, or Title VII.

Each statute prohibits retaliation. The ADA provides that "no person shall discriminate against any individual who, because such individual has opposed any act or practice made unlawful by [the ADA], or because such individual made a charge . . . under the ADA. 42 U.S.C. § 12203(a) (alterations supplied). Likewise, the ADEA prohibits employers from discriminating against an employee because that employee "has opposed any practice made unlawful by [the ADEA], or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under the ADEA." 29 U.S.C. § 623(d). Finally, Title VII makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment . . . because he [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a) (alterations and ellipsis supplied). To prevail on a retaliation claim under any of the foregoing statutes, a plaintiff must show: (1) she engaged in statutorily protected

activity *under the applicable statute*; (2) she suffered an adverse employment action; and (3) a causal link between the protected activity and the adverse action. *See Stewart v. Happy Herman's Cheshire Bridge*, 117 F.3d 1278, 1287 (11th Cir. 1997) (ADA); *Stone v. Geico General Insurance Co.*, 279 F. App'x 821, 822 (11th Cir. 2008) (ADEA); *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (Title VII).

Here, plaintiff alleges that she engaged in protected activity by previously filing a federal lawsuit against UPS (*i.e.*, Civil Action Number 3:23-cv-1128-CLS), and "for filing various grievances."[16] In her previous lawsuit, plaintiff asserted claims under Title VII for race and gender discrimination, retaliation, and a racially hostile work environment. Therefore, she engaged in protected activity under Title VII. However, plaintiff did not provide the specifics of the "various grievances" she alleges that she filed. Accordingly, she has failed to allege that she engaged in protected activity under the ADA and the ADEA, and those claims must fail.

With respect to her claim of retaliation under Title VII, plaintiff has failed to allege that she suffered an adverse employment action. Therefore, her Title VII retaliation claim also is due to be dismissed.

## E.     Hostile Work Environment (Count V)

Count V also constitutes an impermissible, shotgun pleading for the same

---

[16] Doc. no. 1-1 (Complaint) ¶ 33.

reasons set forth in the preceding section.  Even so, it is due to be dismissed for other reasons.

As an initial matter, the hostile work environment claims under Title VII and the ADEA are duplicative, and are due to be dismissed as previously explained in sections B and C of this opinion.  As for any hostile environment claim plaintiff intended to assert under the ADA, she has not alleged *any* supporting facts. Accordingly, this Count is due to be dismissed.

## F.    Request for Leave to Amend

The final paragraph of plaintiff's *sparse* response to the motion to dismiss contains the following request:

> If this Honorable Court finds plaintiff's complaint deficient under Rules 8 or 12(b)(6), Fed. R. Civ. P., plaintiff respectfully moves for leave of Court to file an amended complaint, in accordance with *Vibe Micro v. Shabanets*, 878 F.3d 1291 (11th Cir. 2018), and would further respectfully request guidance from the Court how the Amended Complaint, if leave to amend is granted, can cure such deficiencies to avoid a non-merits dismissal, furthering judicial efficiency, and finality.

Doc. no. 7 (Plaintiff's Opposition to Defendant's Motion to Dismiss or in the Alternative Plaintiff's Motion for Leave of Court to Amend Plaintiff's Complaint). UPS opposes the "motion," pointing out that plaintiff failed to attach a proposed amended complaint, or otherwise set forth the substance of the proposed amendment.

In *Vibe Micro*, the Eleventh Circuit held that, "[w]hen a litigant files a shotgun

pleading, is represented by counsel, and fails to request leave to amend, a district court must *sua sponte* give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds."  878 F.3d at 1298.  Those circumstances are not present here.  As explained in the previous parts of this discussion, plaintiff's complaint is due to be dismissed on grounds other than the impermissible, shotgun pleading found in Counts IV and V.  Instead, Eleventh Circuit's holding in *Long v. Satz*, 181 F.3d 1275 (11th Cir. 1999) applies: "A motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment."  *Id.* at 1279.  Plaintiff failed to do either.

UPS amply and comprehensively identified the deficiencies in plaintiff's complaint, and plaintiff did little, if anything, to address them.  Moreover, plaintiff has failed to demonstrate to the court that an amended complaint would survive dismissal.  Accordingly, leave to amend the complaint will not be granted.

## IV. CONCLUSION

For all of the foregoing reasons, the motion of UPS to dismiss plaintiff's complaint is due to be granted.  A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

16

**DONE** this 19th day of March, 2025.

_____
Senior United States District Judge